UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ALLEN SMITH, ) | Civil Action No.: 4:12-cv-3588-DCN-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CAROLYN W, COLVIN[1], ) | |
| Acting Commissioner of Social Security; ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

**PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on December 21, 2009, alleging a disability onset date of May 30, 2009. His applications were denied at all administrative levels and upon reconsideration. Plaintiff filed a request for a hearing. An administrative law judge (ALJ) held a hearing on May 25, 2011, and subsequently issued an unfavorable decision on June 16, 2011. The Appeals Council denied Plaintiff's request for review on October 24, 2012, making the ALJ's

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

decision the Commissioner's final decision. Plaintiff sought judicial review in this court by the filing of a complaint on August 9, 2012.

## PLAINTIFF'S ARGUMENTS

1. Whether the Administrative Law Judge (ALJ) erred in finding that Plaintiff was not credible.
2. Whether the Plaintiff is disabled due to his mental condition.
3. Whether the ALJ erred by not asking proper questions of the VE (vocational expert) and in ignoring the favorable testimony of the VE.

Pl. Brief 4.

## FACTUAL BACKGROUND

Plaintiff was born on July 1, 1962, and was 47 years of age on the alleged onset date. Plaintiff has at least a high school education and past relevant work as a truck driver, hardware sales person, cashier and sawmill foreman.

## DISABILITY ANALYSIS

In the decision of June 16, 2011, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since May 30, 2009, the alleged onset date (20 CFR 404.1571 et seq. and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease, obesity; and bipolar disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the

> claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he cannot stand longer than one hour at a time and can occasionally perform postural movements. He can perform single, repetitive tasks that do not require close proximity or coordination with co-workers or continuous interaction with the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 1, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 30, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 24-34).

Under the Social Security Act (the Act), 42 U.S.C. § 405 (g), this court's scope of review of the Commissioner's final decision is limited to determining: (1) whether the decision of the Commissioner is supported by substantial evidence, and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence

which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a. An ALJ must consider: (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work, and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5), pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R.

§ 404.1503(a); Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and if proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if he can return to his past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423 (d)(5). He must make a prima facie showing of disability by showing he was unable to return to his past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the national economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## ARGUMENTS/ANALYSIS

**Plaintiff's Credibility**

Plaintiff argues that the ALJ erred in finding that Plaintiff was not entirely credible. Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does

the fact finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ set out a summary of Plaintiff's medical records and testimony at the hearing and concluded that Plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms was not credible. The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

The undersigned concludes the ALJ conducted the proper credibility analysis under the Social Security Rules and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible. The ALJ cited to objective medical evidence and explained how this evidence contradicted the testimony provided by Plaintiff. Specifically, the ALJ noted (1) Plaintiff's objective physical examination results, which include relatively benign clinical findings, (2) Plaintiff's failure to obtain treatment until more than six months after his alleged onset date, (3) Plaintiff's history of conservative treatment for his physical impairments, (4) Plaintiff's treatment records showing that Plaintiff was successfully managing his reported symptoms of depressive and manic episodes with medication, (5) Plaintiff's unremarkable mental status examination results, (6)

Plaintiff's treatment records reflecting GAF scores consistent with moderate symptoms of depression, (7) Plaintiff's failure to attend scheduled appointments in February and March of 2010, (8) the lack of medical restrictions by any treating source, and (9) Plaintiff's daily activities, reflecting his ability to care for himself, prepare simple meals, infrequently do laundry, watch television, listen to the radio, play games, swim, play with his pets, watch softball games, drive, shop for groceries, occasionally attend church and socialize with a friend at his house. (Tr. 28-29).

Based upon the record and decision as a whole, Plaintiff's allegation of error is without merit. Substantial evidence supports the ALJ's determination that the Plaintiff's testimony was not fully credible. The fact that the Plaintiff can point to some other evidence in the record that supports his alleged inability to work does not diminish the ALJ's analysis. When conflicting evidence is presented, it is up to the ALJ to resolve those inconsistencies. Hays v. Sullivan, 907 F.2d, 1453, 1456 (4th Cir.1990). Here, the ALJ's decision is supported by substantial evidence.

**Whether Plaintiff is disabled due to his mental condition**

Plaintiff argues that the ALJ erred in finding that he did not meet the listing for Listing 12.04 (affective disorders). This listing requires that "[o]ne must have two of the following: 1) Marked restrictions of activities of daily living, 2) Marked difficulties in maintaining social functioning, 3) Marked difficulties in maintaining concentration, persistence or pace and 4) Repeated episodes of decompensation each of extended duration." The ALJ discussed each of these requirements in his decision. Although Plaintiff argues that he does meet the listing for affective disorders, it appears that he addresses only one of the four requirements listed above–restrictions of activities of daily living. The ALJ found the following with respect to this requirement:

>  The first functional area is activities of daily living. In this area, the claimant has no

>limitation. The documentary evidence of record (Exhibits 4E, 3F, 13F, and 21F) in conjunction with the claimant's testimony indicated that he was able to dress himself and care for his personal hygiene independently, make himself simple meals, infrequently do laundry, watch television, listen to the radio, play cards/checkers/chess, swim, play with his pets, watch softball games near his home, drive, shop for food, attend church, and socialize with a friend at his home.

(Tr. 25-26).

Plaintiff argues that the ALJ ignored evidence in the record showing that he does have limitations in activities of daily living. Plaintiff points to evidence that he isolates himself and spends time in his family's shed (Tr. 307), often has a family member do his laundry because he does not like going to the laundromat (Tr. 46), does not do any cooking[2], does not have hobbies and only has one friend who comes by once or twice a month (Tr. 59- 61). However, the ALJ found Plaintiff not to be entirely credible and, discussed above, substantial evidence exists for such a credibility determination. Plaintiff fails to discuss the other functional areas provided in listing 12.04. Thus, he fails to show that the ALJ erred in finding that he did not meet listing 12.04.

Plaintiff also argues that the ALJ failed to adequately analyze an undated report signed by Nurse Melanie Smith and Dr. Michael Huber at the Department of Veterans Affairs mental health clinic, which states that Plaintiff was last seen on 5/13/11 and was diagnosed with general anxiety disorder and bipolar affective disorder II with depressed mood and hypomania as well as anhedonia, periods of feeling worthless, increased appetite with weight gain, and impaired sleep which was disrupted by nightmares. It was also noted that he has a history of impulsiveness, imprudent spending, rapid thoughts, irritability and persistent anxiousness. The report also notes he has had suicidal ideations and had participated in a well-thought-out plan which was never implemented.

---

[2]Specifically, Plaintiff testified that he can do a little cooking, his brother is a much better cook, and he could cook for himself if he had to. (Tr. 59-61).

Plaintiff was assessed a GAF score of 51. (Tr. 684).

Plaintiff cites to the treating physician rule, asserts that this report by Nurse Smith and Dr. Huber shows that he is disabled, and argues that the ALJ failed to set forth specific reasons for the weight given to Dr. Huber's medical opinion. Plaintiff's argument is unavailing. First, in his decision, the ALJ specifically cites to the record discussed by Plaintiff and states that "the opinions of the claimant's treating physicians at the Department of Veterans Affairs, regarding the claimant's global assessment of functioning of 50-51 (Exhibits 3F, 8F, 12F, 19F and 22F) are given great weight, as they are supported by the evidence of record." (Tr. 29). Thus, Dr. Huber's assessment of a GAF score of 51, which indicates moderate limitations in occupational or social functioning, was given great weight and the ALJ explained the reason for the weight given. However, the remainder of the report contains only a summary of Plaintiff's treatment history and self-reported symptoms. It contains no functional assessments. "The mere diagnosis of an impairment does not establish that a condition is disabling; there must be a showing of related functional loss." See Hawkins v. Astrue, No. 8:08-3455, 2009 WL 3698136, at *4 (D.S.C. Nov. 3, 2009) (citing Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986)). Accordingly, Plaintiff's argument that the report by Nurse Smith and Dr. Huber shows that he is disabled fails.

Next, Plaintiff argues that the ALJ erred by giving weight to the state agency physicians' residual functional capacity assessments because the state agency doctors did not have all of Plaintiff's medical reports and did not examine him.

In May 2010, State agency physician Dr. Mary Lang reviewed Plaintiff's medical records and opined that he could meet the exertional requirements of medium work. (Tr. 491). Dr. Lang also opined that Plaintiff could frequently perform all postural activities and had no manipulative or

environmental limitations. (Tr. 492-94). In September 2010, a second State agency physician, Dr. Jean Smolka, affirmed Dr. Lang's assessment (Tr. 605-12).

In March 2010, a State agency psychologist, Olin Hamrick, reviewed Plaintiff's medical records and opined that Plaintiff's bipolar disorder and alcohol abuse caused no limitations with respect to his activities of daily living; moderate limitations with respect to his ability to maintain social functioning and concentration, persistence, or pace; and no episodes of decompensation. (Tr. 403-16). He concluded that Plaintiff's mental limitations did not meet the criteria for any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), including Listings 12.04 (affective disorders) and 12.09 (substance addiction disorders). (Tr. 406, 411). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.09.

With respect to Plaintiff's specific mental limitations, Dr. Hamrick opined that Plaintiff would likely have moderate difficulty understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; interacting appropriately with the general public; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers; responding appropriately to changes in the work setting; and setting realistic goals or making plans independently of others. (Tr. 417-18). Despite these limitations, however, Dr. Hamrick opined that Plaintiff had the mental RFC to perform simple, one-step, repetitive tasks for at least two-hour periods at a time; did not require special supervision; would not be expected to miss work due to his symptoms; and could work regularly and accept supervisory feedback, though he was best-suited for a job that did not require continuous interaction with the public. (Tr. 419). In September 2010, a second State agency psychologist, Dr. Camilla Tezza, reviewed an updated record and concurred with Dr. Hamrick's PRTF and Mental RFC

assessments (Tr. 587-603).

State agency medical and psychological consultants "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96–6p, 61 Fed.Reg. 34,466–01, 34,467 (July 2, 1996). The regulations require that ALJs consider the findings of such experts as "opinion evidence." 20 C.F.R. § 404.1527(f)(2)(i). Further, the ALJ specifically addressed the limited scope of the records before the State agency doctors and independently weighed the additional evidence, ultimately adopting Dr. Hamrick's and Dr. Tezza's proposed mental limitations and assessing greater physical limitations than Dr. Lang and Dr. Smolka had proposed. (Tr. 26, 30). Thus, Plaintiff's argument is without merit.

**Hypothetical Given to the Vocational Expert**

Finally, Plaintiff argues that the ALJ's first hypothetical question to the VE, which the ALJ ultimately adopted as his RFC finding, did not properly orient the VE to the extent of Plaintiff's physical and mental limitations. (Tr. 26-33, 69). At the hearing, The ALJ asked the VE to consider a hypothetical individual, with the same age, education, and work history as Plaintiff, who had the capacity to perform light work, except that he could not stand for more than one hour at a time; could occasionally perform all postural movements; and was limited to single, repetitive tasks that did not require close proximity to or coordination with co-workers, nor continuous interactions with the public. (Tr. 69). The VE testified that such an individual could not perform any of Plaintiff's past jobs, but could perform light, unskilled jobs as a parts packer (3,500 jobs statewide; 212,000 nationwide); grader and sorter (1,000 jobs statewide; 52,000 nationwide); and product tester/weigher (240 jobs statewide; 12,000 nationwide). (Tr. 69-70). The VE testified that an additional restriction to no more than occasional contact with others would not affect the number of positions available

in any of the three occupations he identified. (Tr. 70). In response to another hypothetical limiting the individual to sedentary work, the VE testified that the individual could perform sedentary, unskilled jobs as an assembler, quality control examiner, or parts packer. (Tr. 70). The VE testified that no jobs would accommodate an individual who had confrontations and/or outbursts with co-workers or other employees once or twice per month. (Tr. 70-71). Upon examination by Plaintiff's counsel, the VE testified that a total restriction on contact with the public would not affect the number of sedentary, unskilled jobs he identified, and "probably" would not affect the number of light, unskilled jobs (Tr. 71-72); however, a limitation requiring the individual to miss more than two days per month would preclude all work. (Tr. 73). As stated above, the ALJ ultimately adopted the first hypothetical as Plaintiff's residual functional capacity.

Plaintiff argues the ALJ should have included in his hypothetical questions limitations based upon his concentration, lack of energy, degenerative disc disease and not being able to lift more than ten pounds, bend or stoop. However, for the reasons discussed above, the ALJ's hypothetical and ultimate RFC are supported by substantial evidence, and he appropriately relied on the VE's response to that hypothetical in determining that Plaintiff could perform a significant number of jobs in the national economy.

## CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this

Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court recommends that the Commissioner's decision be AFFIRMED.

                                                  s/Thomas E. Rogers, III
                                                  Thomas E. Rogers, III
                                                  United States Magistrate Judge

February 4, 2014
Florence, South Carolina